NATIONAL TUBE WORKS COMPANY, *Appellant*, v. RING REFRIGERATING AND ICE MACHINE COMPANY.

In Banc, December 4, 1893.

1. **Fraudulent Conveyance:** PREFERENCE: INTENT. Fraudulent intent on the part of the debtor alone is not sufficient to defeat a preference in favor of a creditor; it must be shown that the latter was a party to the fraud or participated in it.

2. ————: ————: ————. A conveyance may be fraudulent, though made to secure a *bona fide* debt, its character depending on the intent with which it was made.

3. ————: ————: INSTRUCTION. An instruction on such question which ignores the intent of the grantor is erroneous.

4. **Corporation:** FRAUDULENT CONVEYANCE. A corporation cannot, as against its creditors, apply its assets in satisfaction of debts of persons whom it is under no obligation to pay and the inhibition extends to their use in the payment of the private debts of its officers.

5. **Fraudulent Conveyance:** CONSIDERATION. Where a part of the consideration of a conveyance is fictitious or fraudulent as to creditors, the entire transaction is vitiated.

*Appeal from St. Louis City Circuit Court.*—HON. JAS. E. WITHROW, Judge.

REVERSED AND REMANDED.

*G. A. Madill* and *Seneca N. Taylor* for appellant.

(1) The deed of trust of defendant to Tracy was in its nature a voluntary conveyance, because half of the entire amount it was given to secure was for the individual debt of John Ring, the president of the

defendant company. The defendant at the time was in embarrassed circumstances, and was immediately afterwards unable to meet its maturing obligations. These things being so, made the deed of trust a fraudulent conveyance within the meaning of the statutes. *Lionberger v. Baker*, 88 Mo. 450; *Potter v. McDowell*, 31 Mo. 62; *Patton v. Casey*, 57 Mo. 118; *Payne v. Slanton*, 59 Mo. 158; *Greenwood v. Burns*, 50 Mo. 52; *Sumner v. Summers*, 54 Mo. 340; *Wheeler & Wilson v. Givan*, 65 Mo. 93; 2 Morawetz on Private Corporations, 789, 792; *Hawkins v. Altson*, 4 Ired. Eq. (N. C.) 145. (2) Mr. Tracy, being a director of the defendant and holding the note of John Ring for money loaned to Ring, had no right to surrender that note, and have issued to himself the note of the defendant for the same and take a deed of trust on defendant's property to secure such note, the defendant at the time being hopelessly insolvent. *Wheeler & Wilson v. Givan*, 65 Mo. 93; *Greenwood v. Burns*, 50 Mo. 52; 2 Morawetz on Corporations, 789, 792; *Bank v. Douglas*, 1 McCrary, 86; Cook on Stock and Stockholders and Corporation Law, sec. 661; *Beach v. Miller*, 14 N. E. Rep. 698; *Heywood v. Lumber Co.*, 64 Wis. 639; *Manufacturing Co. v. Importing Co.*, 30 Fed. Rep. 885; *Adams v. Milling Co.*, 35 Fed. Rep. 435; *Lippincot v. Carriage Co.*, 25 Fed. Rep. 577; *Chouteau v. Allen*, 70 Mo. 338; *Wilbur v. Lynd*, 49 Cal. 290; *Lingle v. Ins. Co.*, 45 Mo. 109; *Hopkins' appeal*, 90 Pa. St. 69. (3) The defendant being insolvent at the time it gave this deed of trust to Mr. Tracy in payment of a debt owing by Ring to Tracy, committed an act of fraud. It was a fraudulent conveyance within the meaning of the law. *Woodson v. Pool*, 19 Mo. 340; 2 Morawetz on Private Corporations, 789, 792. The capital of a corporation constitutes a trust fund charged primarily with the payment of the corporate debts.

Nat. Tube Works Co. v. Machine Co.

This being so the directors have no right to appropriate it to themselves by a fraudulent novation. *Eppright v. Nickerson,* 78 Mo. 490; *Webster v. Upton,* 91 U. S. 65; *Railroad v. Filter,* 60 Pa. St. 124. (4) Where part of the consideration for a deed of trust is fraudulent the entire conveyance is void, as to creditors. *State ex rel. v. Robertson,* 102 Mo. 410; *Kuykendall v. McDonald,* 15 Mo. 420; *McNichols v. Rubbleman,* 13 Mo. App. 515; *State ex rel. v. Distilling Co.,* 20 Mo. App. 26; *Hanna v. Finley,* 33 Mo. App. 645; *Clark v. Lee,* 44 N. W. Rep. (Mich.) 260; *Wallash v. Wylie,* 28 Kan. 138; *Butts v. Peacock,* 23 Wis. 359; *Brasher v. Jamison,* 13 S. W. Rep. 809; *Wallis v. Adoue,* 13 S. W. Rep. 63; *King v. Hubble,* 42 Mich. 599; Wait on Fraudulent Conveyances, 228; *Freybe v. Tiernan,* 13 S. W. Rep. 370. (5) The deed of trust given by defendant on its real estate to Tracy was in the nature of a voluntary conveyance, therefore, without regard to the motive the defendant had in giving it, the law fixes the character of the transaction as fraudulent, and supports the allegation of the affidavit for the attachment, viz: "That the defendant has fraudulently conveyed and assigned its property and effects so as to hinder and delay its creditors." *Bank v. Price,* 41 Mo. App. 294; *Douglas v. Cissna,* 17 Mo. App. 44; *Cooper v. Standley,* 40 Mo. App. 138; *Reed v. Pellitese,* 28 Mo. 173; *Potter v. McDowell,* 31 Mo. 62; *Lionberger v. Baker,* 88 Mo. 62. (6) A creditor cannot, in addition to securing his own debt, take a conveyance of an unreasonable amount of his debtor's property, where the latter is in embarrassed circumstances, so as to enable the debtor to hinder and delay other creditors. To do this is a fraud. Much more is it a fraud when done by a director of a corporation. *McNichols v. Rubbleman,* 13 Mo. App. 515; *Potter v. McDowell,* 31 Mo. 62; *Thompson v. Drug Co.,*

50 N. W. Rep. 50. (7) When the debtor, as in the case at bar, conveys its land in fraud of creditors, the creditor may institute its suit to set aside the fraudulent deed and subject the land to the payment of the debt, by first ascertaining the interest of the debtor therein; or, it may attach and sell the land under execution, before the ascertainment of the debtor's interest, and then set aside the fraudulent conveyance. *Lionberger v. Baker*, 88 Mo. 455; *Tall v. Safer*, 75 Mo. 460; *Ryland v. Callison*, 54 Mo. 513; *Bobb v. Woodward*, 50 Mo. 95. (8) The true rule for appellate courts to follow is: Whenever error intervenes a presumption of prejudice arises, and, unless the record shows, beyond a doubt, that no prejudice resulted, there must be a reversal. *Clark v. Fairley*, 30 Mo. App. 335; *Deery v. Cray*, 5 Wall. 807; *Smiths v. Shoemaker*, 17 Wall. 630; *Railroad v. O'Brien*, 119 U. S. 99; *Gilmer v. Higley*, 110 U. S. 47; *Potter v. Railroad*, 46 Iowa, 399; *Stafford v. Oskaloosa*, 57 Iowa, 748; *Reynolds v. Keokuk*, 34 N. W. Rep. (Iowa) 167; *Gillett v. Corum*, 5 Kan. 608; *Hall v. Jenness*, 6 Kan. 364; Thompson on Charging the Jury, sec. 130; *State v. Sims*, 68 Mo. 305; *McDonald v. Sims*, 82 Mo. 538; *Suttie v. Aloe*, 39 Mo. App. 38; *Duke v. Railroad*, 99 Mo. 347. It is reversible error to give conflicting instructions, because it is impossible to tell which the jury followed. Thompson on Charging the Jury, p. 97, sec. 69; *Frederick v. Allgaier*, 88 Mo. 598, 603; *State v. McNally*, 87 Mo. 644; *State v. Simmons*, 68 Mo. 305.

*Frank K. Ryan* and *C. H. Krum* for respondent.

(1) First point made by appellant, that deed of trust to Tracy was a voluntary conveyance, supported neither by facts, nor authorities cited. *First*. Sole ground of contention is, that half of the debt the deed

was given to secure was the individual debt of Ring. This was merely a question of fact, and was found adversely to appellant. *Second.* Authorities cited have no application. *Lionberger v. Baker,* 88 Mo. 450, deed to daughter; *Potter v. McDowell,* 31 Mo. 62, deed in trust for wife; *Patton v. Casey,* 57 *Id.* 118, holds not necessary to show actual intent to defraud; *Payne v. Stanton,* 59 *Id.* 158, voluntary conveyance void as to existing creditors; *Greenwood v. Burns,* 50 *Id.* 52, holds that agent cannot receive payment in satisfaction of his own debt; *Sumner v. Summers,* 54 *Id.* 340, deed held void, because part consideration was compounding felony; *Wheeler, etc., v. Givan,* 65 *Id.* 93, imagination of man cannot conjecture application; 2 Morawetz, 789 and 792, no application whatever to the point; *Hawkins v. Altson,* 4 Ired. Eq. 145, merely reiterates familiar principles as to a purely voluntary conveyance. Contention of appellant upon this point as far-fetched as that below of "jugglery in the books" and of concealment of assets by a resort to "double credits."

(2) Second point, without merit, that "Tracy, being a director of the defendant and holding the note of John Ring for money loaned to Ring, had no right to surrender that note and have issued to himself the note of the defendant for the same and take a deed of trust on defendant's property to secure such note, the defendant at the time being hopelessly insolvent. *First.* Point based upon two assertions. (*a*) That the money was loaned to Ring. (*b*) That respondent was insolvent. Both assertions untrue, and so found by jury. Money loaned went to corporation. Respondent was solvent and would be going concern to-day but for levy of attachment. *Second.* Authorities cited have no application: *Wheeler, etc., v. Givan, Greenwood v. Burns,* Morawetz on Corporations, all noticed under

first point; *Union Bank v. Douglas*, 1 McCrary, 86, merely holds that assets of corporation are trust fund; *Beach v. Miller*, 14 N. E. Rep. 698, holds that officers of corporation cannot make wholesale distribution of assets among themselves; no one contends that they can; *Mfg. Co. v. Imp. Co.*, 30 Fed. Rep. 885, no such case; *Heywood v. Lumber Co.*, *Adams v. Milling Co.*, *Chouteau v. Allen*, *Hopkins' appeal*, *Lingle v. Insurance Co.*, seem to have been put in for "padding," after the fashion of some law-book makers; *Wilbur v. Lynd*, 49 Cal. 290, asserts a proposition which is not the law, and *Lippincott v. Carriage Co.*, 25 Fed. Rep. 577, is a citation favorable to the respondent. Idle to cite cases where the point decided either has no application, or the general doctrine is one which nobody disputes. Legerdemain evidently not confined to "books of defendant." "Jugglery," not lost art with appellant. (3) Third point a legal curiosity. "The defendant being insolvent at the time it gave this deed of trust to Mr. Tracy in payment of a debt owing by Ring to Tracy, committed an act of fraud. It was a fraudulent conveyance within the meaning of the law." This is the third repetition of the same assertion. (4) No occasion to reply to fourth and fifth points of appellant. In so far as they are not merely repetitions of assertions already noticed, they state propositions which no one disputes and which furnish no aid in the present case. (5) The sixth point of appellant involves two propositions. *First*, that the articles of association constituted a false representation, because the patents were taken at two high a valuation by the respondent; and, *secondly*, that Tracy obtained security too great in amount when the mortgage on the patent was given to him. Answer to this, obvious. (*a*) Issue whether valuation of patent was made in good faith as the basis of capitalization of respondent, or merely for

purposes of fraud, submitted to jury by court, and jury found for respondent. (*b*) Theory of value as to capitalization by no means same as to basis of mortgage. *First.* Former depends upon good faith of directors. *Liebke v. Knapp*, 79 Mo. 22. *Second.* Latter not even dependent upon marketable value at time of giving the security. Appellant confounds case of payment of debt in property with mortgage merely to secure debt. *McNicholls v. Rubbleman*, and other cases cited, apply to purported sales and not to actual mortgages.

MACFARLANE, J.—This is an appeal by plaintiff from a judgment in favor of defendant on a plea in abatement to an attachment suit.

Plaintiff commenced its suit on the twenty-fifth day of October, 1890, on several notes and bills made and accepted by respondent between August 6, 1890, and October 4, thereafter, and in aid thereof filed an affidavit and sued out an attachment, which was levied upon the property of defendant, and to which the plea in abatement was filed. The grounds of the attachment were that the defendant had fraudulently conveyed and assigned its property and effects and was about fraudulently to convey its property and effects so as to hinder and delay its creditors, and also that the debt sued for was fraudulently contracted on the part of the defendant.

The evidence tends to prove that John Ring owned three letters patent of the United States. Early in the year 1879, Ring and his associates, John H. Tracy, Frank K. Ryan, A. R. Payinhaus and James J. Campbell organized defendant corporation with a capital of $100,000 and themselves constituted the first board of directors. The agreement among these promoters was that said letters patent should be transferred by Ring

to the corporation for $60,000 of the full paid stock of the company and in full for said patents. Of the remaining $40,000 of the capital stock $20,000 was to be sold for cash and $20,000 was to remain in the treasury of the company. No cash was paid into the hands of the board of directors when the corporation was organized, though the certificate filed showed that the whole capital stock had been paid up in lawful money of the United States.

The evidence tended further to prove that after the organization of the corporation, $80,000 of paid up capital stock of the company was issued to Mr. Ring in consideration of the assignment of the letters patent, and $20,000 was placed in the treasury of the company for sale and which was to provide the operating capital. Part of this was afterwards sold. From its organization John Ring was president and general manager of the company.

The evidence tended to prove, though conflicting, that in December, 1889, Ring, representing defendant, with a view of obtaining a line of credit with plaintiff, stated that there was $20,000 in cash in the treasury of the company, when in truth there was nothing. That on the faith of this representation plaintiff gave defendant the credits which are the foundation of the suit.

The evidence also tended to prove that Ring borrowed of Tracy the sum of $10,000 for which he gave his individual note and a portion of his stock in the corporation as collateral security, and that the money borrowed went into the corporation to the credit of Ring and was applied in liquidation of his indebtedness to the company. On August 6, 1880, the $10,000 so borrowed from Tracy was included in a note made to Tracy by defendant and this note amounting to $20,000 was secured by the deed of trust on the property of defendant. The note from Ring to Tracy was there-

upon canceled. This deed was not recorded until October 6, 1890. A mortgage was also given to Tracy on the letters patent to secure a note of $5,000.

At the request of the plaintiff the court gave the usual instructions in such cases to the effect that if, at the date of the attachment, defendant had concealed, removed or disposed of its property or effects with the intent to hinder and delay its creditors, or was about to do so, the verdict should be for plaintiff.

The court on its own motion instructed the jury that, if defendant represented to plaintiff before contracting any of its indebtedness that it had on hand in its treasury $20,000 of its own funds and that said representation was untrue, but was believed by plaintiff and the credits sued on were given in reliance of their truth, then the debt sued for was fraudulently contracted and the verdict should be for the plaintiff.

The third instruction given at request of defendant was as follows: "If the jury believe from the evidence that the mortgage upon the real estate and buildings, machinery and apparatus of the defendant, dated August 6, 1890, the chattel mortgage given to Tinker and the mortgage covering the patents, were all given in consideration of, and to secure the payment of, moneys actually advanced or loaned to the defendant, then neither of said conveyances were fraudulent, although the effect of their having been given was to give a preference or preferences to certain creditors over other creditors of the defendant."

The fifth instruction was as follows: "The court instructs the jury that if they believe from the evidence that the moneys secured by the deed of trust dated August 6, 1890, which has been read in evidence were moneys which had actually been loaned to the defendant by John H. Tracy, or by him to John Ring, and used by Ring in the business of the company, then

it was lawful for the defendant to execute this deed of trust, and such deed was valid, even though it was not put on record by Tracy until shortly before this suit was begun.   The law did not require the deed to be recorded and it was valid, unless it was given without consideration and merely for purposes of fraud, or was kept from record as a part of a design to work a fraud upon creditors of the corporation."

The seventh instruction was as follows:   "The court instructs the jury that an insolvent debtor has the right to prefer or secure one creditor to the exclussion of all other creditors, and that a conveyance by way of preference or security, made in good faith and merely to prefer or secure is valid, although the effect of it may be to postpone the demands of other creditors, or, in the language of the attachment act, to 'hinder or delay' such creditors.   Before such a conveyance can be found to be fraudulent, within the meaning of the statute, it must have been proven to have been given not for the purpose of preference or security merely, but to preserve a secret use for the debtor or create for such debtor a secret estate in the property in fraud of the rights of creditors not preferred or secured."

Plaintiff asked and the court refused to give instruction B as follows:   "The court instructs the jury, that if they believe, from the evidence, that $10,000 of the debt secured by the deed of trust given by the defendant to John H. Tracy's trustee, was for a loan made by said Tracy to John Ring individually, and secured by shares of stock in the defendant corporation, in April 1890, and that thereafter, by connivance between said Ring, or Tracy, and the directors of the defendant corporation, said stock was surrendered to said Ring, and said $10,000 was included in said deed of trust, then said deed of trust was a fraudulent conveyance, in that it would tend to hinder and delay cred-

itors, and the jury should find for the plaintiff."

The action of the court in giving and refusing these instructions constitutes the errors complained of.

I. Questions of fraudulent preferences given by a debtor in failing circumstances to one or more creditors to the exclusion of others usually arise in contests between the creditors themselves. In such contests in order to defeat the preference it must be shown that the preferred creditor was a party to the fraud of the debtor or participated with him in committing it. Fraudulent intent on the part of the debtor alone is not sufficient to defeat the preference. The questions in this case arising on a plea in abatement concern the acts and intent of the debtor alone. The decisions are all to the effect that a conveyance may be fraudulent, though made to secure a *bona fide* debt. Its character depends upon the intent with which it is made. *Dougherty v. Cooper* 77 Mo. 529, and cases cited; *Sexton v. Anderson*, 95 Mo. 379; *Craig v. Zimmerman*, 87 Mo. 478.

Instruction 3 advises the jury that the mortgages were not fraudulent if they were made by defendant to secure money actually advanced or loaned to it. The intent of the grantor in making the deed is wholly ignored. The other instructions informing the jury that an intent on the part of defendant in making the conveyances, to conceal, remove or dispose of its property so as to hinder or delay creditors would make them fraudulent, do not in our opinion, supply the omissions of the element of fraudulent intent from this one. The jury might readily infer, taking the instructions together, that a fraudulent intent could not exist, if the mortgages were made to secure *bona fide* debts.

II. The validity of $10,000 of the debt secured by the deed of trust to Tracy was questioned. The evidence, we think, tended to prove that Tracy loaned Ring, who was president of the company, on his own

account, $10,000, which was used in liquidating his own indebtedness to the defendant company, and that the mortgage afterwards given to secure an alleged indebtedness of $20,000 to Tracy included this debt of Ring.

A corporation has no right, as against its creditors, to apply its assets in satisfaction of the debts of other persons which it is under no obligation to pay. It is said: "A corporation cannot give away its property or transfer it, unless in good faith for value, if its creditors would thereby be left unsecured." 2 Morawetz on Private Corporations, sec. 789. We are unable to make a distinction between directly giving away the property and using it in payment of the private debts of its officers. Either would be fraudulent as to creditors. Morawetz on Corporations, sec. 792. If Ring borrowed the money on his own account, the debt became his individual debt, regardless of the use he made of the money. Using it in satisfaction of a debt of his own to the company, did not create an obligation on the part of defendant to assume the payment to Tracy of the debt, though the money, by that means, was used by Ring in the business of the company.

Now, it can be inferred from instruction 3, and is, in effect, declared in instruction 5, that though the money was loaned by Tracy to Ring still if it was used, by the latter, in the business of the company, then the mortgage securing it would be valid. These instructions, to say the least of them, were misleading and should have been so modified as to require a finding by the jury that the money was borrowed by Ring for the use of the company, and not for his individual use for the purpose of liquidating his indebtedness to it.

III. It is well settled law that if a part of the consideration for a conveyance is fraudulent or fictitious, as to creditors, the entire transaction will be vitiated.

The doctrine was so emphatically announced in *State ex rel. v. Hope*, 102 Mo. 429. The court says: "If any part of the consideration of the bill of sale was fraudulent and void, it would taint the whole transfer and render such instrument entirely void." See authorities cited in that case.

So we can say here, if a part of the $20,000 indebtedness secured by the mortgage to Tracy was the individual indebtedness of Ring, then the deed, in its entirety, was fraudulent as between defendant and its creditors, and the attachment should have been sustained. It follows that instruction B asked by plaintiff should have been given.

On account of the errors indicated, the judgment is reversed and cause remanded. All concur, except BARCLAY, J., who is absent.